SUNDSTRAND HEAT TRANSFER, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Intervenor.

No. 75–2075.

United States Court of Appeals, Seventh Circuit.

Argued May 28, 1976.
Decided July 14, 1976.

Harry L. Browne, Stanley E. Craven, Kansas City, Mo., for petitioner.

Lynn A. Agee, Memphis, Tenn., for intervenor.

Elliott Moore, Deputy Assoc. Gen. Counsel, Judith P. Wilkenfeld, Robert A. Giannasi, Attys., N. L. R. B., Washington, D. C., for respondent.

Before CLARK,[*] Associate Justice (Retired), FAIRCHILD, Chief Judge, and CUMMINGS, Circuit Judge.

FAIRCHILD, Chief Judge.

This case is before the court upon the petition of Sundstrand Heat Transfer, Inc. to review in part an order of the N.L.R.B. The Board has applied for enforcement of its order, and the United Auto Workers International Union has intervened, with leave.

For the most part, the facts are adequately set forth in the decision of the Administrative Law Judge and the Board, 221 NLRB, No. 111. We shall avoid unnecessary repetition.

Sundstrand does not challenge the Board's findings that Sundstrand threatened to shut down the plant if the Union

---

[*] Associate Justice (Retired) Tom C. Clark of the Supreme Court of the United States is sitting by designation.

were voted in, and thus engaged in § 8(a)(1) unfair labor practices. Sundstrand does challenge (1) the Board's findings of § 8(a)(5) unfair labor practices in the failure to notify the Union concerning the layoffs; (2) the award of backpay from the date of the respective April layoff until the time, after certification and bargaining, that Sundstrand placed these employees on recall lists and granted severance pay; and (3) the Board's finding that the rejection of the challenge of Hall and Fuller to junior employees was discriminatory, and a § 8(a)(3) unfair labor practice. A discussion of these claims follows:

## I. Refusal to Bargain

The first election, having been contested, was set aside pursuant to stipulation in early 1974. The second election, held April 18, 1974, resulted in an apparent Union victory. Sundstrand filed objections (which are not claimed to have been frivolous) and the Union was not certified until September 6.

■ Although at first blush, the sequence of events might suggest that the substantial layoffs promptly after the Union election victory were in deliberate fulfillment of the Sundstrand threat to close the plant if the Union were voted in, both the Board and we are foreclosed from that speculation. All parties seem to concede that the layoffs were compelled by a sudden and unexpected loss of business. It follows that the layoff itself, because of compelling economic considerations, was not subject to the Board rule that "an employer acts at its peril in making changes in terms and conditions of employment during the period that objections to an election are pending and the final determination has not yet been made." *Mike O'Connor Chevrolet-Buick-GMC Co., Inc.*, 209 NLRB 701, 703 (1974).

Thus the Board did not find the layoff itself a unilateral change in terms and conditions of employment which, though occurring before certification, would be determined, upon certification, to have been a § 8(a)(5) unfair labor practice. It considered, however, that because of the presumptive status of the Union as collective bargaining representative during the interim, Sundstrand acted at its peril in failing (1) to notify the Union of the layoff, (2) to give the Union the information the Union requested concerning the laid-off employees, and (3) to bargain with the Union concerning the effects of the layoff. Thus, the Board appears to reason, at the time of certification, it was determined that those failures were § 8(a)(5) unfair labor practices.

■ We consider the Board's conclusions with respect to failures (1) and (2) to be reasonable extensions of the "at-its-peril" doctrine. The economic compulsion which would make it unreasonable to require the employer to delay the layoffs until certification in order to avoid the "at-its-peril" doctrine would not render burdensome the employer's notifying the Union of the layoffs and supplying the information the Union requested.

■ We reach a different conclusion with respect to the failure of Sundstrand to bargain, prior to certification, over the effects of the layoff. It appears that there is no general duty to bargain with a union during the period after the election which the union appears to have won, but while objections to the election remain unresolved. *General Electric Co.*, 163 NLRB 198 (1967); *Trinity Steel Co., Inc.*, 103 NLRB 1470 (1953); *Harbor Chevrolet Co.*, 93 NLRB 1326 (1951). It seems to us highly illogical to apply the "at-its-peril" doctrine to failure to bargain, before certification, over the effects of a layoff which was compelled by economic necessity, and for that reason excepted from the "at-its-peril" doctrine. We are unable to agree with the Board that, upon certification, it was determined that Sundstrand's failure, prior to certification, to bargain over the effects of the layoffs was a § 8(a)(5) unfair labor practice. Sundstrand did bargain after the certification. Therefore we affirm the Board's finding of a § 8(a)(5) unfair labor practice only as to failure to notify and to supply requested information.

## II. Backpay Award

Upon finding a violation of § 8(a)(5), the Board ordered Sundstrand to make whole all employees who were laid off in April until the time they were placed on recall lists and granted severance pay. This award involved backpay to 86 employees for approximately a seven month period.

Since the function of the Board's remedy is to attempt to restore the situation to that which would have been obtained but for the illegal action, *Phelps Dodge Corp. v. N. L. R. B.*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *Cooper Thermometer Co. v. N. L. R. B.*, 376 F.2d 684 (2nd Cir. 1967), it follows that even if the employer had a duty to bargain, a full backpay remedy must have been predicated on the assumption that bargaining over the effects of the layoff would have kept the employees on the job. This is wholly improbable under the facts of this case. Therefore, the backpay remedy would be unreasonable even if there were a duty to bargain over the effects of the layoff which there was not, prior to certification. We therefore find that the Board abused its discretion and we accordingly set aside the award of full backpay to all employees laid off.

## III. Reinstatement of Hall and Fuller

Section 8(a)(3) prohibits employer discrimination in "any term or condition of employment" in order to discourage union membership. The facts as presented, including statements made to Hall and Fuller at the time of layoff to the effect that they got what they deserved and it was hoped that they would not come back, substantially support the Board's finding that in denying employees Hall and Fuller the right to challenge junior employees for jobs, Sundstrand was motivated by their open support for the Union, and thus committed a § 8(a)(3) unfair labor practice.

Sundstrand relies upon the fact that Hall and Fuller delayed seven days before asserting their right to bump junior employees. We think that the Board could properly determine that in the absence of a rule limiting the period for exercising the challenge, the delay of seven days was not so unreasonable as to compel the finding that Sundstrand's action was not discriminatory.

## IV. Order

We set aside paragraph 1(e) of the Board order since Sundstrand had no duty prior to certification to negotiate with the Union over the effects of the April layoff, and did negotiate thereafter. We set aside paragraph 2(b) since backpay for all the employees laid off in April cannot be sustained as a remedy. The notice ordered to be posted under paragraph 2(e) will necessarily be modified to reflect the elimination of 1(e) and 2(b). Sundstrand has not challenged any provision of the order as being moot by reason of the closing of the plant. Except for the portions of the order set aside or modified, the order will be enforced.